1

2

3

4

5

6

7

8                      **IN THE UNITED STATES DISTRICT COURT**

9                      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DRAKE JONES,                              No.  2:21-CV-0886-DAD-DMC-P

12                   Plaintiff,

13         v.                                  FINDINGS AND RECOMMENDATIONS

14   HERNANDEZ, et al.,

15                   Defendants.

16

17         Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42

18   U.S.C. § 1983.  Pending before the Court is Defendants' unopposed motion for summary

19   judgment.  See ECF No. 25.

20         The Federal Rules of Civil Procedure provide for summary judgment or summary

21   adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

22   together with affidavits, if any, show that there is no genuine issue as to any material fact and that

23   the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The

24   standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

25   56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

26   the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

27   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

28   / / /

                                              1

1     moving party

2
> . . . always bears the initial responsibility of informing the district court of
3
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
4
> genuine issue of material fact.

5     <u>Id.</u>, at 323 (quoting former Fed. R. Civ. P. 56(c)); <u>see also</u> Fed. R. Civ. P. 56(c)(1).

6     If the moving party meets its initial responsibility, the burden then shifts to the

7 opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

8 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

9 establish the existence of this factual dispute, the opposing party may not rely upon the

10 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

11 form of affidavits, and/or admissible discovery material, in support of its contention that the

12 dispute exists.  <u>See</u> Fed. R. Civ. P. 56(c)(1); <u>see also</u> <u>Matsushita</u>, 475 U.S. at 586 n.11.  The

13 opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

14 affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

15 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th

16 Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

17 return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436

18 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

19 simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

20 taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

21 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

22 claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

23 of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

24     In resolving the summary judgment motion, the court examines the pleadings,

25 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

26 <u>See</u> Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, <u>see</u> <u>Anderson</u>,

27 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

28 court must be drawn in favor of the opposing party, <u>see</u> <u>Matsushita</u>, 475 U.S. at 587.

1    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

2    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

3    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

4    1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

5    judge, not whether there is literally no evidence, but whether there is any upon which a jury could

6    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

7    imposed."  Anderson, 477 U.S. at 251.

8

9                                            **I.  BACKGROUND**

10       A.       **Plaintiff's Allegations**

11              This action proceeds on Plaintiff's original complaint.  See ECF No. 1.  Plaintiff

12   names the following as Defendants: (1) Hernandez, Correctional Officer; (2) Cruz, Correctional

13   Officer; (3) Cervantes, Correctional Officer; and (4) Evans, Correctional Officer.  See id. pg. 2.

14   Plaintiff alleges Eighth Amendment claims against each defendant.  See id. pg. 3.  Plaintiff

15   contends that each defendant used excessive force on Plaintiff during a cell extraction.  Id.

16   According to Plaintiff, "[e]ach officer kicked [Plaintiff] dozens of times in [the] ribs, back and

17   face and each officer punched [Plaintiff] in the same areas as they kicked [Plaintiff] in."  Id.

18   Additionally, Plaintiff asserts that Sergeants Purtle, Brunner, and McElroy – who are not named

19   as defendants – orchestrated the act.  Id.  Plaintiff also claims that he did not receive medical

20   attention after the incident and suffered from broken ribs on both the right and left side, in

21   additional to "lacerations on back, arms, face, and legs."  Id.

22       B.       **Procedural History**

23              On August 4, 2021, the Court issued an order that this case proceed on Plaintiff's

24   complaint as to Plaintiff's Eighth Amendment excessive force claim.  See ECF No. 8.  On

25   October 12, 2021, Defendants filed an answer to complaint.  See ECF No. 13.  The matter was

26   stayed on October 22, 2021, to allow for participation in the Court's early Alternative Dispute

27   Resolution program.  The matter proceeded to a settlement conference held by Magistrate Judge

28   Jeremy D. Peterson on February 9, 2022.  As the case was not resolved, the Court lifted the stay

                                                        3

of proceedings and set a schedule for the case on February 15, 2022.  See ECF No. 20.  Following

close of discovery, Defendants filed the currently pending motion for summary judgment on

January 1, 2023.  See ECF No. 25.  Plaintiff has not filed an opposition.

## II.  DEFENDANTS' EVIDENCE

Defendants' unopposed motion is supported by the sworn declarations, and

exhibits attached thereto, of the following: (1) Defendants' counsel Theodore G. Lee, Esq., ECF

No. 25-3; (2) Custodian of Records Erin Takerhara, ECF No. 25-4; (3) Custodian of Records

Jayesh Kunnamal, ECF No. 25-5; (4) Correctional Officer B. Cervantes, ECF No. 25-6; and (5)

Defendant J. Hernandez, ECF No. 25-7.

Defendant also submitted a Statement of Undisputed Facts, ECF No. 25-2,

outlining the following facts as undisputed:

1.   On October 4, 2020, at or about 7:00a.m., Plaintiff's suicide watch began.  Declaration of Lee Exhibit 1 (Depo.) at 13–15.

2.   At around 10:46 a.m., Defendants and other CHCF correctional officers responded to an alarm regarding Plaintiff's suicide attempt in Facility B4V's cell 108L.  Declaration of Custodian of Records (Custodian Decl.) Exhibit 1; Declaration of J. Hernandez (Hernandez Decl.) ¶ 3); (Declaration of B. Cervantes Decl.) ¶ 3; Declaration of Custodian of Medical Records (Medical Custodian Decl.) Exhibit 1.

3.   Plaintiff had a metal shower cord wrapped around his neck.  Custodian Decl. Exhibit 1; see also Hernandez Decl. ¶ 4; Cervantes Decl. ¶ 4.

4.   Sergeant J. Purtle ordered Plaintiff to remove the cord, which Plaintiff ignored and instead, he tightened it and banged his head hard against the cell door.  Custodian Decl. Exhibit 1.

5.   Purtle ordered Plaintiff to stop his self-injurious behavior, which Plaintiff did not comply.  Custodian Decl. Exhibit 1.

6.   Purtle again ordered Plaintiff to take the shower cord off and to submit to restrains, which Plaintiff ignored once more.  Custodian Decl. Exhibit 1.

7.   By this time, Plaintiff no longer stood straight and started to fall against the cell door towards the floor.  Custodian Decl. Exhibit 1.

8.   Fearing for Plaintiff's safety, Purtle ordered the officers on scene to make an emergency entry into Plaintiff's cell.  Custodian Decl. Exhibit 1.

9.    Plaintiff did not resist but also seemed unresponsive. Hernandez Decl. ¶ 5; Cervantes Decl. ¶ 4.

10.    Defendant Evans removed the shower cord from Plaintiff's neck without any resistance.  Custodian Decl. Exhibit 1.

11.    After helping Plaintiff get up, officer conducted a search to look for dangerous contraband on Plaintiff's body and inside the cell. Custodian Decl. Exhibit 1; Hernandez Decl. ¶ 6–7; Cervantes Decl. ¶ 5.

12.    Defendants' involvement ended soon thereafter.  Custodian Decl. Exhibit 1; Hernandez Decl. ¶ 8; Cervantes Decl. ¶ 6.

13.    Medical staff attended to Plaintiff shortly after the incident. Depo. At 43; Custodian Decl. Exhibit 1.

14.    A few hours after his interaction with Defendants, Plaintiff complained of an abrasion on the right upper area of his ear and superficial redness on the left area of his forehead.  Medical Custodian Decl. Exhibit 2.

15.    Plaintiff did not comment on what caused the injuries, nor did he express pain or discomfort.  Medical Custodian Decl. Exhibit 2.

16.    Later in the evening, Plaintiff sought another medical service, during which the nurse noted dried blood on his upper right ear with a superficial cut and reddened areas on some parts of Plaintiff's body. Medical Custodian Decl. Exhibit 3.

17.    Neither Plaintiff nor the nurse reported any broken ribs or lacerations elsewhere.  Medical Custodian Decl. Exhibit 3.

18.    At no time did Defendants use force during or after checking on Plaintiff, as they had no need to use any.  Hernandez Decl. ¶ 11; Cervantes Decl. ¶ 7.

19.    This complied with the pertinent state prison regulations and policies that proscribed custody staff's unnecessary force on inmates. Cal. Code. Regs. tit. 15 (Title 15), § 3268(b) (2020); Cal. Dep't Operations Manual (DOM) § 51020.5 (2020).

20.    And because no officers used force on Plaintiff that day, they did not prepare any use-of-force reports regarding the alleged incident.  Cervantes Decl. ¶ 7.

ECF No. 25-2.

/ / /

/ / /

/ / /

/ / /

5

**III. DISCUSSION**

1

2          Plaintiff alleges Defendants violated his Eighth Amendment by using excessive

3   force during a cell extraction and denying him medical care thereafter.  See ECF No. 1.  In their

4   unopposed motion for summary judgment, Defendants argue they are entitled to judgement as

5   a matter of law because: (1) Plaintiff cannot establish that excessive force was used; and (2) the

6   undisputed evidence shows that Plaintiff was provided medical attention following the incident.

7          The treatment a prisoner receives in prison and the conditions under which the

8   prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

9   and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

10   511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

11   of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

12   (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

13   Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

14   "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

15   801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

16   two requirements are met: (1) objectively, the official's act or omission must be so serious such

17   that it results in the denial of the minimal civilized measure of life's necessities; and (2)

18   subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

19   inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

20   official must have a "sufficiently culpable mind."  See id.

21       **A.      Excessive Force**

22          When prison officials stand accused of using excessive force, the core judicial

23   inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline,

24   or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992);

25   Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as

26   opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims,

27   is applied to excessive force claims because prison officials generally do not have time to reflect

28   on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475

1   U.S. at 320-21.  In determining whether force was excessive, the court considers the following

2   factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

3   between the need for force and the amount of force used; (4) the nature of the threat reasonably

4   perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.

5   See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force

6   was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

7   1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

8   because the use of force relates to the prison's legitimate penological interest in maintaining

9   security and order, the court must be deferential to the conduct of prison officials.  See Whitley,

10  475 U.S. at 321-22.

11          Defendants argue the "evidence shows that they did not use force when they

12  entered Plaintiff's cell on October 4, 2020, because the situation did not require any" and Plaintiff

13  has failed to put forth evidence demonstrating some force was used.  ECF No. 25-1, pg. 5.

14  Additionally, Defendants assert there is no evidence that Defendants acted with specific intent to

15  harm Plaintiff.  See id. pg. 6.  Defendants refer to Plaintiff's medical records which do not

16  support Plaintiff's allegations of broken ribs but rather "only show negligible injuries of abrasion,

17  superficial reddening to the skin, and a shallow cut to the upper right ear."  Id. pg. 6.

18          The Court finds the undisputed evidence presented by Defendants demonstrate that

19  the actions taken by Defendants were in good faith because Defendants only acted in response to

20  Plaintiff's attempt to commit suicide.  Therefore, the Defendants' actions were an adequate

21  response to an emergency and were necessary to prevent Plaintiff from further self-harm.

22  Additionally, the unopposed evidence shows that the severity of Plaintiff's injuries from the

23  Defendants' actions were minimal, and the evidence does not support Plaintiff's allegations in the

24  complaint of severe injuries.

25          On the evidence provided by Defendants, which Plaintiff has not opposed, the

26  Court finds there is no genuine dispute of material fact as to Plaintiff's excessive force claim.

27  / / /

28  / / /

7

1       **B.**      **Medical Needs**

2              Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

3  injury or illness, also gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

4  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

5  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other

6  grounds by Sandin v. Conner, 515 U.S. 472 (1995).  An injury or illness is sufficiently serious if

7  the failure to treat a prisoner's condition could result in further significant injury or the ". . .

8  unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

9  1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)

10 (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors

11 indicating seriousness are: (1) whether a reasonable doctor would think that the condition is

12 worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities;

13 and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v.

14 Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

15             The requirement of deliberate indifference is less stringent in medical needs cases

16 than in other Eighth Amendment contexts because the responsibility to provide inmates with

17 medical care does not generally conflict with competing penological concerns.  See McGuckin,

18 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

19 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

20 1989).  The complete denial of medical attention may constitute deliberate indifference.  See

21 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

22 treatment, or interference with medical treatment, may also constitute deliberate indifference.  See

23 Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate

24 that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

25             Negligence in diagnosing or treating a medical condition does not, however, give

26 rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

27 difference of opinion between the prisoner and medical providers concerning the appropriate

28 course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

8

1  90 F.3d 330, 332 (9th Cir. 1996).

2          Defendants argue that "[m]edical staff attended to Plaintiff shortly after the

3  incident" and "neither Plaintiff nor the nurse reported any broken ribs or lacerations elsewhere."

4  ECF No. 25-1, pg. 3.  On this record, the Court finds Defendants have met their initial summary

5  judgment burden of demonstrating the absence of triable issue of fact arising from Plaintiff's

6  allegations of deliberate indifference in violation of Plaintiff's Eighth Amendment rights.

7          Here, the undisputed evidence presented by Defendants demonstrate that Plaintiff

8  was medically treated, and that Plaintiff did not report, nor did medical examiners suspect, any

9  broken ribs or other severe injury.  The record, including Plaintiff's own deposition, indicates that

10  medical examiners assessed and treated Plaintiff shortly after the incident, at Plaintiff's request.

11  See ECF No. 25-3, pgs. 13-14; see also ECF No. 25-5, pgs. 2-7.  The medical examiners provided

12  their assessments from each visit with Plaintiff.  See ECF No. 25-5, pgs. 2-7.  In each assessment,

13  Plaintiff did not report pain or indication of broken ribs.  Id.  Rather, the medical examiners noted

14  Plaintiff suffered from an ear laceration and reddened parts on Plaintiff's body.  Id.  In sum, the

15  evidence shows that, contrary to Plaintiff's allegation of deliberate indifference, prison officials

16  attended to his minimal medical needs after the incident at issue.

17          On the evidence provided by Defendant, which Plaintiff has not opposed, the

18  Court finds that there is no genuine dispute of material fact as to Plaintiff's medical needs claim.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

9

1

### IV.  CONCLUSION

2          Based on the foregoing, the undersigned recommends that Defendants' unopposed

3   motion for summary judgment, ECF No. 25, be granted.

4          These findings and recommendations are submitted to the United States District

5   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

6   after being served with these findings and recommendations, any party may file written objections

7   with the Court.  Responses to objections shall be filed within 14 days after service of objections.

8   Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

9   Ylst, 951 F.2d 1153 (9th Cir. 1991).

10

11  Dated:  June 15, 2023

12                                                    _____
                                                      DENNIS M. COTA
13                                                    UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28